**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:19-cv-00961-LCB-LPA**

| | |
|---|---|
| PATRICK CLEMONS,<br><br>**Plaintiff,**<br><br>v.<br><br>**THE CITY OF GREENSBORO,** *et al.*,<br><br>**Defendants.** | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Rules 7.2 and 7.3 of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina, the Defendants, the City of Greensboro and its officers named in their individual capacities, Officer L.S. Garrison, Officer J.L. Beavers, Officer N.B. Fisher, Officer V.S. Oxendine, and Officer A.A. Tejada (collectively "Defendants"), hereby submit this memorandum of law in support of their Motion for Summary Judgment.

## STATEMENT OF THE CASE

This suit arises out of an encounter between Plaintiff and officers of the Greensboro Police Department, which encounter took place during the later hours of September 22, 2016 and the early morning hours of September 23, 2016. (D.E. 21).

The claims currently pending before the Court- after an order granting the Defendants' partial Motion to Dismiss (D.E. 15), Plaintiff's subsequent amended pleading (D.E. 21), and a voluntary dismissal of certain claims (D.E. 22)- are Plaintiff's 42 U.S.C. § 1983 claims for violation of his Fourth Amendment rights and his state law tort claim for

false imprisonment. (D.E. 21). Plaintiff has not conducted any discovery in this action and cannot elicit a forecast of evidence sufficient to create a genuine issue of material fact as to the pending claims against Defendants, and therefore, Defendants are entitled to judgment in this action as a matter of law.

## STATEMENT OF THE FACTS

On September 22, 2016, Plaintiff alleges he was hosting a social gathering with friends in celebration of his and his mother's birthdays when Officers J.L. Beavers, N.B. Fisher, V.S. Oxendine, and A.A. Tejada (hereinafter the "Officers") approached his house and property and informed him that they had received a complaint. (D.E. 21 at ¶¶ 20-23). The Officers responded to the complaint at approximately 9:23 p.m. (*See* Search Warrant at 3, attached hereto as ***Exhibit B***)[1].

The Officers were responding to a citizen complaint received that week alleging illegal narcotics were being sold at the dwelling located at 400 Marshall Street, which was later identified as Plaintiff's residence. (Ex. B at 3-4). By September 22, 2016, four citizen complaints had been received that year regarding a reported ongoing issue with the sale of illegal liquor by the drink at the subject residence. (Id. at 3).

Upon approaching Plaintiff's residence, Officer Fisher smelled a strong order of what he knew to be marijuana emanating from the house. (Id.). Smoke inside the home was

---

[1] Defendant Officer L.S. Garrison did not respond to any call for service at 400 Marshall St. on the evening of September 22, 2016, and therefore, she has been improperly named in this action and is entitled to judgment as a matter of law on this basis alone. (*See* Declaration of Officer L.S. Garrison, attached hereto as ***Exhibit A***).

also visible. (Ex. B at 4). Two females were walking from the rear of the home, one of whom appeared to be carrying a clear plastic cup holding liquor. (Ex. B at 3). Two garbage cans on the property were filled with beer cans, liquor bottles, and cardboard containers usually used to package beer. (Ex. B at 4). Empty beer cans were scattered on the lawn. (Id.). From outside the home, the Officers could see ten to twelve individuals inside going from room to room while holding what appeared to be clear cups containing liquor. (Id.) Officer Fisher, based on his experience and training, believed this activity was, at a minimum, consistent with the operation of an illegal liquor house. (Id.).

Plaintiff walked outside of the residence to speak with the Officers and confirmed that he was the owner of the property. (Id.). Plaintiff was visibly intoxicated but coherent. (Id.). He was informed of the citizen complaint and advised that the Officers had smelled marijuana coming from his residence, that the home was filled with smoke, and that individuals on the property were holding plastic cups of liquor. (Ex. B at 4; D.E. 21 at ¶ 26). Officer Fisher asked Plaintiff for consent to search his house, but Plaintiff declined. (Id.; D.E. 21 at ¶¶ 26-27).

Officers Beavers, Tejada, and Oxendine entered Plaintiff's dwelling for the limited purpose of securing the scene and assuring there were no subjects inside and that no evidence was being destroyed. (Ex. B at 4). Persons inside the residence were asked to exit and were temporarily detained following the sweep as a part of securing the house. (Id.). During the protective sweep of the residence, Officer Beavers observed that the kitchen had been modified in a manner consistent with serving liquor by the drink. (Id.). The

kitchen had a half-door that appeared to serve as a bar entrance, and a wooden board had been positioned across the sink, on which there was a bottle opener. (Id.). There was cash in the sink below the board. (Id.). It appeared as though the board was being used as a surface for pouring customers' liquor by the drink. (Id.). A large amount of open liquor bottles were located next to the sink on the counter. (Id.).

According to Plaintiff's unverified pleading, the protective sweep was complete in a little less than five minutes, after which Officer Fisher left the premises to obtain a search warrant. (*See* Ex. B; D.E. 21 at ¶¶ 31, 64). Plaintiff was then led back into his house by Officers Garrison[2] and Beavers and handcuffed, pending issuance of a search warrant. (Ex. B at 4; D.E. 21 at ¶¶ 37-39). According to Plaintiff, he was instructed to sit in a chair, which Officer Garrison first examined. (D.E. 21 at ¶¶ 37-38). A bag of marijuana, which Plaintiff nakedly alleges was planted by one of the Officers, was found in the cushions of the chair. (Ex. B at 4; D.E. 21 at ¶ 38; Clemons Dep. at 108:4-109:1)[3].

Officer Fisher returned to Plaintiff's residence after obtaining the warrant signed by Magistrate Judge M.B. Moore, which warrant Plaintiff alleges, in a conclusory fashion, was "faulty." (Ex. B at 1; D.E. 21 at ¶ 64). Plaintiff alleges that Officer Fisher returned at or around 12:51 a.m. on the morning of September 23, 2016, but the Search Warrant indicates that 12:51 a.m. is the time the warrant was issued. (Ex. B at 1; D.E. 21 at ¶ 64).

---

[2] Not Officer L.S. Garrison, but rather, a different "Officer Garrison" with the Greensboro Police Department. (*See* Ex. A).

[3] A copy of the referenced excerpt from the transcript of the deposition taken of Plaintiff Clemons in this matter is attached hereto as ***Exhibit C***.

The Officers then conducted a search of the home subject to the search warrant. (D.E. 21 at ¶¶ 64, 66). In addition to the bag of marijuana, items discovered during the search included cocaine and crack from under a refrigerator, $707.69 in cash, and a digital scale, each of which Plaintiff alleges, again without any evidence, was planted by the Officers. (D.E. 21 at ¶ 66; Clemons Dep. at 108:4-109:1). A large amount of beer, liquor, plastic cups and other items indicative of an illegal liquor house were also discovered. (*See* Inventory of Items Seized, attached hereto as ***Exhibit D***).

Plaintiff was not immediately arrested following the search pursuant to the warrant. (D.E. 21 at ¶¶ 76-77). Three warrants for his arrest were subsequently issued on September 23, 2016 by a neutral magistrate, Magistrate Judge J.W. Lung. (*See* Arrest Warrants, attached hereto as ***Exhibit E***). Several days following the encounter, on or around September 27, 2016, Plaintiff turned himself in and was taken into custody in connection with the related criminal charges. (D.E. 21 at ¶¶ 76-77).

Plaintiff contends that he was wrongfully charged with, and arrested for, "possession of marijuana, possession with intent to sell cocaine, maintaining a dwelling, possession of drug paraphernalia, and possession and sale of alcohol beverage without a permit." (Id. at ¶ 77). Despite this contention, a grand jury indicted him on the charges of possession with intent to sell cocaine, possession of marijuana, and maintaining a dwelling, and possession of marijuana paraphernalia. (*See* Indictments, attached hereto as ***Exhibit F***). The charges filed against him were eventually dismissed. (D.E. 21 at ¶ 78).

## QUESTIONS PRESENTED

In accordance with Local Rule 7.2(a)(3), the Defendants' Motion for Summary Judgment presents the following questions for this Court's consideration:

1.     Does the evidence on record demonstrate that there is a genuine issue of material fact as to Plaintiff's claims for relief under 42 U.S.C. § 1983? **No.**

2.     Does the evidence on record demonstrate that there is a genuine issue of material fact as to Plaintiff's state tort claim of false imprisonment? **No.**

## STANDARD OF REVIEW

Summary judgment is warranted pursuant to Rule 56 of the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986); *see* Fed. R. Civ. P. 56(c). Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Sylva Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810 (4th Cir. 1995).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original). While courts must view the facts and inferences "in the light most

6

favorable to the non-moving party," the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material issue for trial. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (1986).

## ARGUMENT

## I. THE DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY FROM ALL OF PLAINTIFF'S § 1983 CLAIMS.

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The immunity is "from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Accordingly, "[t]he qualified immunity determination should normally be made at the summary judgment stage in the litigation." *Ware v. James City Cty., Virginia*, 652 F.Supp.2d 693, 702 (E.D. Va. 2009) (citing *Schultz v. Braga,* 455 F.3d 470, 476 (4th Cir. 2006)).

Qualified immunity shields government officials from liability if they establish either that (1) a plaintiff's evidence fails to show a violation of a constitutional right, or (2)

the right at issue was not clearly established at the time of the officials' alleged misconduct. *See Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

**A.      Plaintiff's evidence fails to demonstrate that the Officers violated his Fourth Amendment rights to be free from unreasonable searches.**

The only searches that appear to be the subject of Plaintiff's Fourth Amendment claims are (1) the pre-warrant protective sweep conducted by Officers Beavers, Tejada and Oxendine and (2) the search conducted by the Officers pursuant to the search warrant.

**1.      Probable cause and exigent circumstances existed to support the warrantless protective sweep of the residence.**

A warrantless search of private property is lawful when "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 (2006) (internal quotations omitted). It is reasonable for officers to "make a warrantless entry onto private property to . . . prevent the imminent destruction of evidence . . . ." *Id.*

The Fourth Circuit has likewise recognized that "when officers have probable cause to believe that contraband is present and, in addition, they reasonably believe that the evidence may be destroyed or removed before they can secure a search warrant, a warrantless entry is justified." *U.S. v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981). For an officer to reasonably believe that the evidence may be destroyed, it is not necessary that the evidence actually be "in the process of destruction." *Id.* at 529.

Plaintiff cannot forecast any competent evidence that a reasonable officer under the circumstances would have believed that the subject protective sweep was unlawful. It is not enough for Plaintiff to merely rely on the allegations within his Amended Complaint that Officers Beavers, Tejada, and Oxendine did not, at any point, have probable cause to search the house. (D.E. 21 at ¶ 79).

> a. *Prior to conducting the initial sweep, the Officers had probable cause to believe contraband was present in Plaintiff's residence.*

Probable cause to search "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996). "Stripped to its essence, the question to be answered is whether an objectively reasonable police officer, placed in the circumstances, had a reasonable ground for belief of guilt that was particularized with respect to the person to be searched or seized." *U.S. v. Humphries*, 372 F.3d 653, 657-58 (4th Cir. 2004) (internal quotations and citations omitted)[4].

Fourth Circuit jurisprudence holds that the odor of marijuana emanating from an automobile or residence alone can provide probable cause to believe that marijuana is present, therefore justifying a search. *See id*. In fact, "when the odor of marijuana emanates

---

[4] Although the *Humphries* case involved the issue of probable cause to arrest, and not to search as is the relevant inquiry here, it still relied in part on search cases because "the quantum of facts required for the officer to search or to seize is probable cause, and the quantum of evidence needed to constitute probable cause for a search or a seizure is the same." *Id.* at 659.

9

from an apartment" the Fourth Circuit has held that "there is 'almost certainly' probable cause to search the apartment." *Id.*

The Officers reasonably perceived that they had probable cause to believe that contraband, namely marijuana, as well as evidence concerning the operation of Plaintiff's dwelling as an illegal liquor establishment, was present in the residence. Prior to conducting their initial sweep, an odor of marijuana had been detected emanating from the home and a large amount of visible smoke had been observed inside the house. Additionally, the citizen complaint that initiated the encounter alleged that the sale of illegal narcotics was taking place at the residence. Moreover, the following was also observed prior to the sweep: (1) two females were walking from the rear of the home, one of whom appeared to be carrying a clear plastic cup holding liquor; (2) two garbage cans on the property were filled with beer cans, liquor bottles, and cardboard containers usually used to package beer; (3) empty beer cans were scattered on the lawn; (4) ten to twelve individuals were inside going from room to room while holding what appeared to be clear cups containing liquor; and (5) prior complaints had been received in 2016 regarding an ongoing issue with the sale of illegal liquor by the drink at the subject residence. These facts are more than sufficient to lead a reasonable officer to conclude that he had probable cause for the sweep of Plaintiff's house.

   b. *The Officers reasonably believed that exigent circumstances were present sufficient to justify an initial sweep of Plaintiff's residence.*

Not only has Plaintiff failed to provide adequate evidence in support of his claim that the initial sweep of his residence was unlawful, but the allegations of Plaintiff's

complaint fail to even acknowledge that the issue of exigent circumstances could play a role in the Court's determination as to whether the initial sweep was lawful. In fact, to the contrary, the evidence on record indicates that exigent circumstances surrounding the sweep justified the Officer's actions.

In *U.S. v. Grissett*, uniformed police officers identified themselves to the occupant of a hotel room who stepped into the hallway and left the door to the room open. 925 F.2d 776, 778 (4th Cir. 1991). The officers could see three additional persons inside the room, and "smelled the odor of marijuana wafting through the open doorway." *Id*. Under these circumstances, the court found that the officers could reasonably conclude that the occupants of the room would attempt to dispose of the evidence before the police could return with [a] warrant" because "the police [had] identified themselves before smelling the marijuana." *Id*. ("This is especially true in the case of an easily disposable substance like drugs.")

The Officers reasonably believed that the contraband within Plaintiff's residence may be destroyed or removed before they could secure a search warrant. Like in *Grissett*, the Officers in this case arrived to Plaintiff's residence and identified themselves to Plaintiff. The odor of marijuana emanated from Plaintiff's residence. Ten to twelve occupants could be observed within the residence through the windows. These individuals were moving from room to room, amidst visible clouds of smoke, with cups in their hands. Moreover, the Officers were outnumbered by the occupants of the subject residence. Certainly, based on these circumstances, the Officers could reasonably conclude that (1)

the occupants could become a danger to the Officers given their number; and (2) they would not only attempt to dispose of the evidence before the police could return with a warrant, but would have the means and manpower to successfully do so.

These factors, when considered together, would lead the reasonable officer to conclude that the pre-warrant entry into Plaintiff's residence for the purpose of conducting the initial sweep was justified. Accordingly, the Officers are entitled to qualified immunity as to any claim that the protective sweep violated Plaintiff's Fourth Amendment rights.

### 2. Probable cause supported the Officers' search of Plaintiff's residence pursuant to the search warrant

It is a general rule that "[t]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (referencing *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746 (1965)). Accordingly, "a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Golino*, 950 F.2d at 870 (referencing *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir.1991)).

#### a. *Plaintiff cannot present any facts showing that Officer Fisher's warrant affidavit included false or misleading statements materially affecting the existence of probable cause*

A search pursuant to a warrant is unreasonable if the warrant was issued subject to a warrant affidavit that is deficient because it contains false or misleading statements that *materially* affect the *existence* of probable cause. *See White v. City of Greensboro*, 408 F. Supp. 3d 677 (M.D.N.C. 2019). A plaintiff can make a related challenge upon a showing

that the warrant affidavit contains a "deliberate falsehood" or statement made with a "reckless disregard for the truth" without which the warrant affidavit is not sufficient to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).

It is not enough for a plaintiff's complaint to merely contain "allegations of negligence or innocent mistake" on the part of an officer, which does "not provide a basis for a constitutional violation." *Miller v. Prince George's Cty., MD*, 475 F.3d 621, 627–28 (4th Cir. 2007) (quoting *Franks*) (internal quotations omitted). To establish "reckless disregard" a plaintiff must put forth evidence which establishes "that an officer acted with a high degree of awareness of a statement's probable falsity; that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Miller* at 627 (internal quotations omitted).

However, a determination that a search warrant contains false or misleading statements is not tantamount to a warrant lacking probable cause. *See White*, 408 F. Supp. 3d at 698. In fact, even a determination that such false or misleading statements were "material to the . . . court's finding of probable cause" does not necessarily demonstrate the absence of probable cause. *Id*. Probable cause for a warrant exists as long as, when the problematic facts "are removed from consideration," those remaining would "induce a reasonable man to commence a prosecution." *Id*.

A close examination of Plaintiff's First Amended Complaint- the only submission we have from Plaintiff given his decision not to conduct discovery in this case- reveals that

13

the only possible "fact" on which he relies for his conclusion that the search warrant was "faulty" was Officer Fisher's reliance on an "erroneous" "assumption" that the half-door in Plaintiff's kitchen was used for the sale of alcohol. (D.E. 21 at ¶34). This allegation, even if it could be established in evidence, falls far short of a false or misleading statement affecting the *existence* of probable cause. At most, it is merely an allegation of negligence or innocent mistake. Further, Plaintiff fails to contend, or to develop any evidence, that the information was relayed with "a reckless disregard for the truth," or to include any evidence that the Officers should have been aware of the falsity, or at least had some doubts as to the truthfulness, of this information.

> b.   *Even removing the fact that Plaintiff's kitchen included a half door does not vitiate probable cause supporting the warrant*

Even if Plaintiff could successfully contend that the search warrant was faulty, the information related to Plaintiff's kitchen half-door is not material to the existence of probable cause. If the facts related to the half-door in Plaintiff's kitchen were removed, the remaining facts- both those related to marijuana and those related to the illegal sale of liquor- still establish probable cause: (1) the citizens complaint alleged that the sale of illegal narcotics was taking place at the residence; (2) an odor of marijuana was detected when the Officers first approached the home; (3) a large amount of visible smoke was inside the home; (4) two females were walking from the rear of the home, one of whom appeared to be carrying a clear plastic cup holding liquor; (5) two garbage cans on the property were filled with beer cans, liquor bottles, and cardboard containers usually used to package beer; (6) empty beer cans were scattered on the lawn; (7) ten to twelve

14

individuals were inside going from room to room while holding what appeared to be clear cups containing liquor; (8) a bag of marijuana was found inside the residence; (9) a wooden board sat across the sink to aid in pouring customers liquor by the drink; (10) a bottle opener was sitting on the board; (11) cash was found below the board in the sink; (12) a large amount of open liquor bottles were sitting on the kitchen counter by the sink; (13) there had been numerous complaints concerning this address in 2016 in reference to an ongoing issue with the sale of illegal liquor by the drink; (14) Plaintiff appeared intoxicated; (15) Plaintiff did not have a license to sell alcohol; (16) no ABC permit had been issued for 400 Marshall Street; and (17) Plaintiff had previously been charged with possession/sale of alcoholic beverage with no permit and possession/sale of non-taxed liquor.

Accordingly, the information concerning the half-door in Plaintiff's kitchen did not materially affect the existence of probable cause, and the weight of the evidence on record indicates that the search pursuant to the warrant was lawful.

> c.     *The magistrate judge had a substantial basis to conclude that probable cause existed to search Plaintiff's home and Plaintiff has forecasted no evidence to the contrary.*

In addition to his unfounded allegation that the warrant lacked probable cause because of false or misleading information contained in Officer Fisher's warrant affidavit, Plaintiff generally contends that the warrant was not supported by probable cause. Plaintiff has also failed to forecast evidence sufficient to support this claim.

15

The relevant standard, given this allegation, is <u>not</u> a *de novo* review of the neutral magistrate judge's conclusion; rather, the Court must determine whether the affidavit submitted in support of the warrant "provide[d] the magistrate with a substantial basis for determining the existence of probable cause." *U.S. v. Leon*, 468 U.S. 897, 915 (1984). As discussed above, ample facts were proffered in the warrant affidavit, providing the magistrate with a substantial basis to conclude that it supported probable cause.

Plaintiff is unable to forecast any evidence with which he can penetrate the presumption of probable cause from the warrant for the search pursuant thereto. Accordingly, the Officers are entitled to qualified immunity on Plaintiff's federal constitutional claim concerning the search pursuant to the warrant.

**B.** **Plaintiff's evidence fails to demonstrate that the Officers violated his Fourth Amendment right to be free from unreasonable arrest/detention.**

The arrests/detentions that appear to be the subject of Plaintiff's Fourth Amendment claims are (1) his temporary detention attendant to Officer Fisher's pursuit of the search warrant and (2) his arrest pursuant to the arrest warrants.

**1.** **The temporary detention of Plaintiff while the search warrant was obtained was lawful**.

In *Segura v. United States*, the United States Supreme Court held that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." 468 U.S. 796, 810, 104 S.Ct. 3380, 3388 (1984). Importantly, this premise extends to the occupants therein "who have legitimate possessory interests in

its contents." *Segura*, 468 U.S. at 798, 104 S.Ct. at 3382. Officers have not violated an occupants' Fourth Amendment right against unreasonable seizures when, having probable cause, they "arrest the occupants . . . and take them into custody . . . to preserve the status quo while others, in good faith, are in the process of obtaining a warrant." *Id*. The detention in *Segura* was approximately 19 hours in duration and was still deemed reasonable. *Id.*

The probable cause factors articulated above in support of the initial protective sweep also supported the detention of Plaintiff while Officer Fisher pursued the search warrant. Plaintiff has not made any allegations or proffered any evidence that the Officers purposefully delayed obtaining the search warrant in this matter. Further, there is no evidence that the seizures were unreasonable in duration. The record evidence establishes that that the Officers first arrived at Plaintiff's residence in response to the citizen complaint at or around 9:23 p.m. on September 22 and that Officer Fisher returned after the search warrant was issued at 12:51 a.m. (Ex. B at 3; D.E. 21 at ¶ 64).

Thus, Plaintiff has failed to forecast any evidence that the Officers' seizures of his dwelling or his person while awaiting the issuance of the search warrant were unlawful, and therefore, they are entitled to qualified immunity and judgment as a matter of law on this issue.

## 2. The Officers' arrest of Plaintiff subject to the arrest warrants was lawful and supported by probable cause.

Probable cause for an arrest "requires only enough evidence to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Wilkes v. Young,* 28 F.3d 1362, 1365 (4th Cir.1994). When an arrest warrant is issued, "it is the

17

magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235, 1239 (2012) (internal quotations omitted). Thus, even if an arrest warrant is not supported by probable cause, an officer will generally still be entitled to qualified immunity and thereby immune to suit. *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 419 (4th Cir. 2005). The only narrow exception to this rule is when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 535, 132 S.Ct. at 1239.

It is the Fourth Circuit Court of Appeals' view that an officer's act in "seeking [an] arrest warrant[] and the magistrate's determination of probable cause provide additional support for [the officer's] claim that he acted with objective reasonableness." *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991). However the "shield of immunity otherwise conferred by the warrant . . . will be lost, for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 565 U.S. at 535, 132 S.Ct. at 1239 (internal quotations omitted). "The threshold for establishing this exception is high" because an officer generally "cannot be expected to question the magistrate's probable-cause determination." *Id*.

Far from "lacking in indicia of probable cause" for the same reasons articulated in support of the search warrant, no reasonable officer would question the subject arrest

warrants issued by the magistrate here. Though he does not bring any cause of action under Section 1983 for fabrication of evidence, and instead limits his claims to the Fourth Amendment, Plaintiff makes grave allegations, with absolutely no factual support, that the Officers "planted" the illegal drugs found in his home that led to his arrest. He even admits that he has no evidence of this, but just believes it to be so. (Clemons Dep. at 108:4-109:1). Plaintiff's unreasonable belief in this conspiracy theory simply does not move the needle on any claim that his Fourth Amendment rights were violated by his arrest. Accordingly, the Officers are entitled to qualified immunity from further litigating this claim because Plaintiff has failed to forecast evidence of a constitutional deprivation.

Moreover, a grand jury returned indictments against Plaintiff. "It has long been settled by the Supreme Court that 'an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' **conclusively determines the existence of probable cause**.'" *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (*quoting Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)) (emphasis added). Plaintiff did not challenge the grand jury indictments in the Amended Complaint, nor has he forecasted any evidence that either of the indictments was not fair upon its face, or that the grand jury was not properly constituted. Accordingly, probable cause for Plaintiff's arrest has been conclusively established as a matter of law.

## II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW TORT CLAIM OF FALSE IMPRISONMENT

### A.   The Officers are entitled to public official immunity, which bars Plaintiff's claim against them for false imprisonment.

A public official is "entitled to immunity from suit" unless the challenged action was "(1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." *White v. City of Greensboro*, 408 F. Supp. 3d 677, 705 (M.D.N.C. 2019). Though Plaintiff makes no effort to clarify which of the above he purports to use to pierce the public official immunity of the Officers, it is presumed that his piercing element of choice "hunts in the pack" of malice, bad faith, or willful and deliberate conduct. To prove that a defendant acted with malice, the plaintiff must show that the defendant "wantonly d[id] that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984).   In *Wilcox v. City of Asheville*, 222 N.C. App. 292, 730 S.E.2d 232 (2012), the Court emphasized that a "plaintiff may not satisfy her burden of proving that an official's acts were malicious through allegations and evidence of mere reckless indifference."

Just as the Officers are entitled to qualified immunity on Plaintiff's federal law claims due to the existence of probable cause, they are similarly entitled to public official immunity on Plaintiff's state law claims against them.

**B. Plaintiff's official-capacity claims against the Officers and the City of Greensboro are derivative of his individual-capacity claim against the Officers, and therefore fail as a matter of law.**

The derivative claim against the City of Greensboro for false imprisonment must be dismissed as a matter of law. Vicarious liability is the Plaintiff's only possible theory of liability for this cause of action, as he has made no allegations of independent or direct municipal action for his alleged false imprisonment. Since the Officers cannot be liable for false imprisonment given their immunity, and the existence of probable cause, neither can the City. *See Turner v. City of Greenville*, 197 N.C. App. 562, 677 S.E.2d 480 (2009) (holding that even where a claim has not been asserted against the involved officers, if the officers would be entitled to public official immunity based upon the plaintiff's forecast of evidence, the derivative claim against the municipality fails as a matter of law). Accordingly, all official-capacity claims, including any against the City, should be dismissed with prejudice.

## CONCLUSION

Plaintiff cannot establish the existence of a genuine issue of material fact by merely relying on his allegations, and he is unable to forecast evidence sufficient to sustain any of his claims against Defendants past summary judgment. Based on the foregoing, the Defendants are entitled to summary judgment on all of Plaintiff's claims, and respectfully request that the Court grant their Motion for Summary Judgment.

Respectfully submitted this the 24th day of November, 2021.

21

/s/  Jason R. Benton

Jason R. Benton
N.C. State Bar No.: 27710
Daniel E. Peterson
N.C. State Bar No. 41521
PARKER POE ADAMS & BERNSTEIN LLP
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, N.C.  28202
Telephone: 704-372-9000
Facsimile: 704-334-4706
Email: jasonbenton@parkerpoe.com
Email: danielpeterson@parkerpoe.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Local Civil Rule 7.3(d)(1) of Rules of Practice and Procedure of the

United States District Court for the Middle District of North Carolina effective June 21,

2021, the undersigned hereby certifies that the foregoing *"Memorandum in Support of*

*Defendants' Motion for Summary Judgment"* was prepared on a computer using Times

New Roman 13 point font and does not exceed 6,250 words.

This 24th day of November, 2021.

/s/  Jason R. Benton
Jason R. Benton
N.C. State Bar No.: 27710
Daniel E. Peterson
N.C. State Bar No. 41521

PARKER POE ADAMS & BERNSTEIN LLP
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, N.C.  28202
Telephone: 704-372-9000
Facsimile: 704-334-4706
Email: jasonbenton@parkerpoe.com
Email: danielpeterson@parkerpoe.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF System and served upon the *Pro Se* Plaintiff via First Class Mail, addressed as follows.

> Patrick Clemons
> 1906 Armhurst Road
> Greensboro, NC  27405

This the 24th day of November, 2021.

> /s/  Jason R. Benton
> Jason R. Benton
> N.C. State Bar No.: 27710
>
> PARKER POE ADAMS & BERNSTEIN LLP
> Three Wells Fargo Center
> 401 South Tryon Street, Suite 3000
> Charlotte, N.C.  28202
> Telephone: 704-372-9000
> Facsimile: 704-334-4706
> Email: jasonbenton@parkerpoe.com
>
> *Attorneys for Defendants*