IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PATRICK CLEMONS, | ) |
| Plaintiff, | ) |
| v. | ) 1:19-CV-961 |
| THE CITY OF GREENSBORO, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this *pro se*[1] action alleging violations of his constitutional rights under 42 U.S.C. § 1983, negligence[2], and false imprisonment against Defendants L.S. Garrison, J.L. Beavers, N.C. Fisher, V.S. Oxendine, and A.A. Tejada (collectively "Defendant Officers"), and Defendant City of Greensboro[3] (the "City"). (ECF Nos. 1; 21.) Before the Court is Defendant's unopposed[4] Motion for Summary Judgment on

---

[1] Though Plaintiff initiated this action *pro se*, (ECF No. 1), and currently appears to represent himself, (Text Order dated Oct. 13, 2021), he has been represented by counsel during portions of the action, (*See* ECF Nos. 3; 32).

[2] Plaintiff, while represented by counsel, filed a Notice of Dismissal with Prejudice of Negligence Claims Only against all Defendants in his First Amended Complaint. (ECF No. 22.)

[3] Plaintiff's only remaining claim against the City is his claim for false imprisonment. (*See* ECF No. 21 at 24–31.)

[4] Plaintiff was sent a Roseboro Letter advising him of his right to file a response to Defendants' Motion for Summary Judgment. (*See* ECF No. 37.) Plaintiff has failed to file any response to Defendant's motion.

Plaintiff's remaining claims. (ECF No. 35.) For the reasons stated herein, the motion will be granted.

I. **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a case such as the one currently before the Court, where Plaintiff has failed to respond, Federal Rule of Civil Procedure 56, provides that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), . . . the court may consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3); *see Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993) ("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'").

In addition, under Local Rule 7.3(k), if a party fails "to file a brief or response [to a motion] within the time specified . . . the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." LR 7.3(k). However, as outlined above, when "considering a motion for summary judgment, the district court *'must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n .8 (4th Cir. 2010) (quoting *Custer*,

12 F.3d at 416); *see Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013); *Adefila v. Select Specialty Hosp.*, 28 F. Supp. 3d 517, 526 n.7 (M.D.N.C. 2014).

## II.    DEFENDANT'S EVIDENCE[5]

As background, Defendants' evidence demonstrates the following: Throughout 2016, Defendant Officers received four citizen complaints regarding the sale of illegal liquor by the drink at Plaintiff's residence. (ECF No. 36-2 at 4.) In addition, during the week of September 19, 2016, Officer Fisher received a citizen complaint that illegal narcotics were being sold at Plaintiff's residence. (*Id.*) In response to these complaints, on September 22, 2016, Defendant Officers visited Plaintiff's residence "to attempt a consent search of the residence." (*Id.*)

Upon arriving at the residence, Officer Fisher smelled a strong odor of marijuana coming from the house and observed an individual carrying a cup containing alcohol. (*Id.*) As he approached the rear of the house, he "observed two garbage cans overflowing with beer cans, liquor bottles, and cardboard containers that cases of beer come in." (*Id.* at 5.) He also observed beer cans in the backyard, approximately ten to twelve people inside the house with "clear plastic cups with what appeared to be liquor inside," and "a large amount of visible smoke inside the house." (*Id.*)

Based on these observations, Officer Fisher requested consent to search Plaintiff's residence, which he denied. (*Id.*) Defendant Officers "then entered the residence and secured the scene to [ensure] there were no other subjects inside and no evidence was being

---

[5] Because Plaintiff has failed to respond to Defendants' motion, the only evidence before the Court is that produced by Defendants. Thus, the Court will treat the motion as uncontested and will examine Defendants' evidence to determine whether they are entitled to judgment as a matter of law.

3

destroyed." (*Id.*)  During this "initial sweep" of Plaintiff's house, Officer Beavers observed that the kitchen was modified in a way to serve alcohol, including: (1) "that a half door has been added onto the kitchen entryway to serve as a bar entrance," (2) "a large amount of open liquor bottles sitting in the kitchen by the sink," and (3) "a wooden board laid across the sink with a bottle opener laying on it and money in the sink," which "appeared to be used to sit the plastic cups on to pour customer's liquor by the drink." (*Id.*)

Following this initial sweep, Officer Fisher left Plaintiff's residence to obtain a search warrant.  (*See id.*; *see also* ECF Nos. 21 ¶¶ 36–37, 64; 23 ¶¶ 36–37, 64; 36 at 4.)  Plaintiff was detained while Defendant Officers waited for a search warrant to be issued.  (ECF No. 36-2 at 5.)  While "frisking" a chair so Plaintiff could have a place to sit, a small plastic bag of marijuana was discovered between the cushions of the chair.  (*Id.*)

After Officer Fisher returned with the search warrant, Defendant Officers searched Plaintiff's home.  (ECF Nos. 21 ¶¶ 64, 66; 23 ¶¶ 64, 66; 36 at 5.)  During the search, Defendant Officers discovered and seized cocaine and crack from under the kitchen refrigerator, $707.81 cash, and a digital scale, along with several other items including a large amount of liquor, beer, and plastic cups.  (ECF No. 36 at 5; *see* ECF No. 36-4 at 2.)

Plaintiff was not immediately arrested; rather, a magistrate judge subsequently issued three warrants for his arrest.  (ECF No. 36 at 5; *see* ECF No. 36-5.)  He turned himself in, (ECF No. 36 at 5), and was indicted by a grand jury, (*see* ECF No. 36-6).  However, all charges filed against Plaintiff were eventually dismissed.  (ECF Nos. 21 ¶ 78; 23 ¶ 78; 36 at

5.) Plaintiff subsequently filed this action. (*See* ECF No. 1.) Defendants now move for summary judgment as to all of the remaining claims.[6] (ECF No. 35.)

## III. DISCUSSION

Defendants argue that they are entitled to judgement as a matter of law because (a) "Officer L.S. Garrison was improperly named in this suit"; (b) Defendant Officers are entitled to qualified immunity from Plaintiff's § 1983 claims; and (c) Plaintiff's false imprisonment claims fail because "Defendant Officers are entitled to public official immunity," and the claims against Defendant Officers in their official capacity and the City are derivative of his individual-capacity claims against [Defendant] Officers." (*Id.* at 2.)

### A. Officer L.S. Garrison

Defendants argue that "Plaintiff's claims [ ] against Officer L.S. Garrison fail as a matter of law because Officer L.S. Garrison was improperly named in this suit," (*id.*), since she "did not respond to any call for service" on the evening at issue. (ECF No. 36 at 2; *see* ECF No. 36-1 ¶ 3.)

According to the sworn Declaration of Officer L.S. Garrison, (1) she did not respond to a call for service on September 22, 2016 at Plaintiff's residence; (2) she was not a participant in any search or seizure of Plaintiff on that date, nor his arrest later in the month; (3) that there is another officer "with the Greensboro Police Department with the

---

[6] Plaintiff's § 1983 claims against Defendant City and Defendant Officers in their official capacities, Plaintiff's negligent failure to train claim, and Plaintiff's equal protection claim were all dismissed by an order issued by this Court. (ECF No. 15 at 8.) As previously mentioned in footnote 2, *supra*, Plaintiff filed a notice which dismissed "with prejudice his claims of negligence against all Defendants." (ECF No. 22.) Accordingly, the only remaining claims before the Court are Plaintiff's § 1983 claims against Defendant Officers in their individual capacities, and Plaintiff's claim for false imprisonment against Defendant City and Defendant Officers.

5

last name of 'Garrison'"; and (4) the other officer with that last name is a male while Officer L.S. Garrison is a female. (ECF No. 36-1 ¶¶ 3-4.) It appears from Plaintiff's First Amended Complaint that the Officer Garrison that Plaintiff is referencing in the Complaint is male. (*See* ECF No. 21 at ¶¶ 8, 22, 25, 28, 38, 42–43, 45, 47–48, 64.) Based on the uncontroverted testimony of Officer L.S. Garrison, which testimony is supported by Plaintiff's Complaint, this Court concludes that Plaintiff incorrectly named Officer L.S. Garrison as a defendant in this suit.

Accordingly, the Court concludes that Defendant L.S. Garrison is entitled to judgment as a matter of law as to all claims in Plaintiff's Complaint; and further, that she will be dismissed from this lawsuit.

## B. Plaintiff's § 1983 Claims[7]

Defendants next argue that Defendant Officers "are entitled to qualified immunity from all of Plaintiff's § 1983 claims" because Plaintiff cannot present any evidence showing a violation of his Fourth Amendment rights. (ECF No. 36 at 7–19.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. In considering Fourth Amendment claims, the key inquiry is always the same: whether, in light of the specific circumstances of the case, the government's invasion of a citizen's personal security was reasonable. *See Terry v. Ohio*, 392 U.S. 1, 19 (1968). Because reasonableness is inherently context specific, courts must

---

[7] Plaintiff asserts these claims against Defendant Officers in there "independent capacity." (ECF No. 21 at 21.) The Court notes that an "independent capacity" suit does not exists for § 1983 claims, and therefore, will construe Plaintiff's § 1983 claims as being against Defendant Officers in their individual capacity.

6

carefully balance "the nature and quality of the intrusion . . . against the countervailing governmental interests at stake." *Yates v. Terry*, 817 F.3d 877, 884–85 (4th Cir. 2016) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)).

A similar balancing is required when, as here, a defendant moves for summary judgment on the basis of qualified immunity: weighing "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To that end, qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Yates*, 817 F.3d at 884.

To overcome qualified immunity, a plaintiff must show two things. First, he must show that "a constitutional violation occurred." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). At the summary judgment stage, this means asking whether the evidence when "viewed in the light most favorable to the plaintiff[,] . . . demonstrate[s] a violation of the plaintiff's constitutional rights." *Harris v. Pittman*, 927 F.3d 266, 270 (2019). "If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there." *Henry*, 652 F.3d at 531. If a violation did occur, the Court must examine "whether the right[s] violated [were] clearly established"—that is, "sufficiently clear that every reasonable official would have understood" that his behavior violated the rights at issue. *See Henry*, 652 F.3d at 531; *Yates*, 817 F.3d at 887. A plaintiff must answer both parts in the affirmative in order to defeat qualified immunity. *See Saucier*, 533 U.S. at 201.

7

Here, Defendants do not appear to dispute that Plaintiff's Fourth Amendment rights were clearly established at the time of the searches; rather, Defendants argue that they did not violate Plaintiff's Fourth Amendment rights by conducting the searches of his residence. (ECF No. 36 at 7–16.)

1. *The Searches of Plaintiff's Residence*

Defendant Officers conducted two separate searches of Plaintiff's residence: (1) the search before acquiring a search warrant, and (2) the search conducted pursuant to the search warrant. (*Id.* at 8.)

i. <u>The Pre-Warrant Search</u>

Defendant Officers argue that they did not violate Plaintiff's Fourth Amendment rights when they searched his home before obtaining a warrant. (*Id.* at 8–12.)

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted). However, "there are 'a few specifically established and well-delineated exceptions' to the search warrant requirement,"— one such exception is exigent circumstances. *United States v. Brown*, 701 F.3d 120, 126 (4th Cir. 2012) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971) (holding that as warrantless search or seizure is not unreasonable if "the police can show . . . the presence of 'exigent circumstances.'"); *Stuart*, 547 U.S. at 403 ("[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–394 (1978)).

8

The imminent destruction of evidence constitutes an exigent circumstance. *Brown*, 701 F.3d at 126; *see United States v. Grissett*, 925 F.2d 776, 778 (4th Cir.1991) ("[e]xigent circumstances can arise when the evidence might be destroyed before a search warrant could be obtained"). "This is especially true in the case of an easily disposable substance like drugs." *Grissett*, 925 F.2d at 778. "The police need not . . . produce concrete proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe." *Id.* (finding that "[s]ince the police had identified themselves before smelling the marijuana, an officer could reasonably conclude that the occupants of the room would attempt to dispose of the evidence before the police could return with a warrant.").

Here, Defendant Officers have demonstrated the existence of exigent circumstances for the search. According to Officer Fisher's sworn statements, as he approached Plaintiff's residence, he "smelled a strong odor of what [he] knew to be Marijuana through [his] training and experience coming from the residence." (ECF No. 36-2 at 4.) He "then encountered two females on the side of the house leaving the residence from the rear of the house." (*Id.*) After speaking with the women, he walked to the rear of the residence where he encountered more people. (*Id.*) As he approached the rear, he "continued to smell a strong odor of Marijuana on the exterior of the residence," and witnessed several individuals get up and enter the residence. (*Id.*) Officer Fisher stated that, "[d]ue to the extremely strong odor of Marijuana on the exterior of the residence, these subjects are believed to have been smoking Marijuana near the rear door of the residence and retreated inside upon sight of Police." (*Id.* at 4–5.) He also observed "approximately 10-12 people" and "a large amount of visible smoke inside the house." (*Id.*) As a result, Defendant

9

Officers "entered the residence and secured the scene to [ensure] there were no other subjects inside and no evidence was being destroyed." (*Id.*) Under the circumstances outlined by Officer Fisher, an objective officer could reasonably believe that the contraband could be disposed of before Defendant Officers returned with a search warrant.

Accordingly, this Court concludes that exigent circumstances existed for Defendant Officers to conduct the pre-warrant search of Plaintiff's residence to prevent the imminent destruction of evidence and therefore no violation of Plaintiff's Fourth Amendment rights occurred.

                ii.    <u>The Search Pursuant to a Search Warrant</u>

Defendant Officers also argue that the warrant they obtained to search Plaintiff's home was valid because it was supported by probable cause. (ECF No. 36 at 12–16.)

"The Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) be based upon probable cause supported by oath, and (3) contain a particular description of the place to be searched and things to be seized." *United States v. Cluthchette*, 24 F.3d 577, 579 (4th Cir. 1994).

Probable cause exists where, considering the totality of the circumstances, a person of reasonable prudence would believe that contraband or evidence of a crime will be found. *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011). "[T]he determination of probable cause by the magistrate who issued the warrant is entitled to 'great deference.'" *United States v. Randolph*, 261 F. App'x 622, 625 (4th Cir. 2008) (quoting *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990)). The reviewing court must only determine "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam). In making this determination,

the reviewing court must consider "only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996). Although probable cause demands "more than a mere suspicion, . . . evidence sufficient to convict is not required." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996).

Here, the following information was provided to the magistrate who issued the search warrant for Plaintiff's property: (1) numerous complaints were received regarding "the sale of illegal liquor by the drink" and illegal narcotics at Plaintiff's residence; (2) Defendant Fisher smelled a strong odor of marijuana upon arriving at Plaintiff's home; (3) a woman was carrying a cup containing alcohol walking from the rear of the home; (4) "two garbage cans [were] overflowing with beer cans, liquor bottles, and cardboard containers that cases of beer come in"; (5) beer cans were in the backyard; (6) approximately ten to twelve people were inside the house with "the same clear plastic cups with what appeared to be liquor inside"; (7) there was "a large amount of visible smoke inside the house"; (8) marijuana was found in a chair in the house; and (9) the kitchen was modified in a way to serve alcohol including: "that a half door has been added onto the kitchen entryway to serve as a bar entrance," that there was "a large amount of open liquor bottles sitting on the kitchen by the sink," and that "a wooden board laid across the sink with a bottle opener laying on it and money in the sink," which "appeared to be used to sit the plastic cups on to pour customer's liquor by the drink." (ECF No. 36-2 at 4–5.)

Given the totality of these circumstances, a person of reasonable prudence would believe that marijuana and evidence of running an illegal liquor house would be found. Affording great deference to the magistrate's determination of probable cause, the Court finds that the finding of probable cause was supported by sufficient information.

11

Therefore, the search warrant was valid, and the search conducted pursuant to the search warrant did not violate Plaintiff's Fourth Amendment rights.

Accordingly, Defendant Officers are entitled to qualified immunity with respect to each of Plaintiff's Fourth Amendment search claims, and Defendants are entitled to judgment as a matter of law on each claim.

### 2. *Detention and Arrest of Plaintiff*

Defendant Officers also argue that the detention and arrest of Plaintiff did not violate the Fourth Amendment. (ECF No. 36 at 16.)

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. "In cases involving a seizure, the standard of 'reasonableness' typically is satisfied by a showing that the police had probable cause to conclude that the individual seized was involved in criminal activity." *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013) (citing *Dunaway v. New York*, 442 U.S. 200, 213–14 (1979)). The Fourth Circuit has held that "as a general rule 'an official seizure of the person must be supported by probable cause, even if no formal arrest is made.'" *Id.* (quoting *Michigan v. Summers*, 452 U.S. 692, 696 (1981)). The burden of showing that a warrantless search is reasonable is on the government. *Id.*

"Probable cause only requires enough evidence to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) (internal quotation marks omitted). Here, Defendant Officers had probable cause to believe that Plaintiff was involved in criminal activity. First, the residence in which there was suspected criminal activity, including operating an illegal liquor house, belonged to Plaintiff. Second, there were numerous complaints regarding the

12

illegal sale of narcotics and liquor by the drink at Plaintiff's residence. (ECF No. 36-2 at 4.) Next, there was a strong odor of marijuana emanating from Plaintiff's residence, and a large amount of smoke was visible in the house which would lead a person of reasonable prudence to believe that marijuana would be found in Plaintiff's home. *See United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) ("[The Fourth Circuit has] repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place.") (internal quotation marks omitted).

Moreover, all of the evidence outlined in the sworn statements of Defendant Fisher described in the preceding sections support a finding of probable cause for Plaintiff's detention. Specifically, the observations of the empty alcohol containers and the kitchen modifications would lead a reasonable officer to believe that Plaintiff was operating an illegal liquor house. (*See* ECF No. 36-2 at 4–5.)

Likewise, the three arrest warrants issued by the magistrate for Plaintiff's arrest were supported by probable cause. Again, the magistrate's determination of probable cause is entitled to "great deference," *Blackwood*, 913 F.2d at 142, and will be upheld if supported by "substantial evidence," *Upton*, 466 U.S. at 728. In making this determination, the reviewing court must consider "only the information presented to the magistrate who issued the warrant." *Wilhelm*, 80 F.3d at 118. Although probable cause demands "more than a mere suspicion, . . . evidence sufficient to convict is not required." *Taylor*, 81 F.3d at 434. The evidence must be "sufficient to warrant a prudent man in believing that [Plaintiff] had committed or was committing an offense and it therefore gave rise to probable cause." *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 418 (4th Cir. 2005) (internal quotation marks omitted).

Here, the magistrate found probable cause to arrest Plaintiff for (1) possession with the intent to sell cocaine, (2) possession of marijuana, (3) possessing for sale alcoholic beverages without first obtaining the applicable ABC permit and revenue license, (4) keeping and maintaining a dwelling house that was used for keeping and selling cocaine, crack cocaine, and marijuana, and (5) possession with the intent to use drug paraphernalia to process and test marijuana. (ECF No. 36-5.) This was supported by the aforementioned evidence supporting the probable cause by the officers, along with the inventory of the items seized at Plaintiff's residence during the search. (*See* ECF No. 36-4.) The observations made by Defendant Officers, along with the evidence collected from Plaintiff's residence was sufficient to warrant a prudent officer to believe that Plaintiff had committed or was committing these crimes. Accordingly, there was sufficient probable cause for the magistrate to issue the arrest warrants.

Because both the temporary detention of Plaintiff and the arrest warrants were based on probable cause, Plaintiff's Fourth Amendment rights were not violated. Accordingly, Defendants Officers are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment seizure claims, and Defendants are entitled to judgment as a matter of law on this ground.

### C. False Imprisonment Claim

Lastly, Defendant Officers argue that Plaintiff's claims for false imprisonment are barred because they are entitled to public official immunity, and "Plaintiff's official-capacity claims against [all Defendants] are derivative of his individual-capacity claim against [Defendant] Officers." (ECF No. 36 at 20–21.)

Under North Carolina law, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Meyer v. Walls*, 489 S.E.2d 880, 888 (N.C. 1997). North Carolina courts have held that public official immunity bars suits for false imprisonment "unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Brown v. Town of Chapel Hill*, 756 S.E.2d 749, 754 (N.C. Ct. App. 2014). Public official immunity is "akin to 'a usual affirmative defense' that can be overcome through evidence of malicious conduct." *Knibbs v. Momphard*, 30 F.4th 200, 232 (4th Cir. 2022) (applying North Carolina law).

Since Plaintiff has failed to file a response to Defendants' motion, there is simply no evidence before the Court that any of the exceptions are present to overcome the public official immunity bar.

Moreover, Plaintiff's false imprisonment claims against Defendant Officers in their official capacity and Defendant City likewise fails as they are derivative of the false imprisonment claims against Defendant Officers in their individual capacity. Plaintiff's false imprisonment claim against the City is based on the principal of respondeat superior, and that claim is "derivative and dependent on the resolution of the [false imprisonment] claims against the defendant-officers." *Prior v. Pruett*, 550 S.E.2d 166, 172 (N.C. Ct. App. 2001). Where officers are entitled to public official immunity, derivative claims against the municipality cannot be maintained. *See Turner v. City of Greenville*, 677 S.E.2d 480, 485 (N.C. Ct. App. 2009). Furthermore, Plaintiff's official-capacity claims against Defendant Officers "are merely another way of pleading an action against" the City. *See Mullis v. Sechrest*, 495 S.E.2d 721, 725 (N.C. 1998).

Accordingly, Defendants are entitled to judgment as a matter of law as to Plaintiff's false imprisonment claim against each Defendant.

## CONCLUSION

Because Defendants have demonstrated that they are entitled to judgement as a matter of law on each of Plaintiff's remaining claims, Plaintiff's action must be dismissed.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 35), is GRANTED and this action is DISMISSED.

This, the 19th day of May 2022.

/s/ Loretta C. Biggs
United States District Judge